IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COMPLETE NUTRITION FRANCHISING, LLC, and R2 DISTRIBUTION, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>J. HOWELL, LLC, et al.,<br><br>Defendants. | 8:17-CV-3170<br><br>MEMORANDUM AND ORDER OF PRELIMINARY INJUNCTION |

This matter is before the Court on plaintiff Complete Nutrition Franchising, LLC's motion for a preliminary injunction (filing 16). For the following reasons, the Court will grant Complete Nutrition's motion.

## BACKGROUND

Complete Nutrition is a retailer of nutritional supplements that has franchised retail stores across the country. Filing 18 at 4.[1] Defendant J. Howell, LLC operated the Complete Nutrition franchises in Knoxville, Tennessee and nearby Alcoa, Tennessee starting in 2015, when it bought the franchise rights from the previous owners. Filing 18 at 4. Defendants James C. Howell and James P. Howell are the members of J. Howell. Filing 18 at 1.

J. Howell entered into two Franchise Agreements with Complete Nutrition in 2015—one for each store. Filing 19-1 at 24-112. The Howells executed personal guaranties for the stores agreeing to be personally bound by the Agreements. Filing 19-1 at 114-118. The Agreements were terminable

---

[1] Failure to file a brief precludes the opposing party from contesting the moving party's statement of facts. NECivR 7.1(b)(1)(C).

by J. Howell only if J. Howell was in compliance with the Agreements and Complete Nutrition was not. Filing 19-1 at 47-48, 92-93. Complete Nutrition could terminate the Agreements for a number of specified reasons—including, as relevant, J. Howell's failure to meet its obligations under the Agreements, closure or abandonment of the stores, or sale of unapproved products. Filing 19-1 at 48, 93.

As part of the Agreements, J. Howell promised that its stores would be used for no purpose other than operation of Complete Nutrition stores. Filing 19-1 at 31-32, 76-77. J. Howell agreed that neither it nor its owners would "directly or indirectly perform any services for, engage in or acquire, be an employee of, lender or guarantor of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any" competing business. Filing 19-1 at 43, 88. And J. Howell agreed that for 2 years after termination of the agreement, neither it nor its owners, nor any member of their immediate families, "will directly or indirectly perform any services for, engage in or acquire, be an employee of, have any financial interest in, loan money to, or have any interest based on profits or revenues of any" competing business within a 25-mile radius of each store. Filing 19-1 at 51, 96. Nor would J. Howell, its owners, or their immediate families "employ or seek to employ any person who is at the time employed by [Complete Nutrition] . . . at any other Complete Nutrition Store or otherwise directly or indirectly induce or seek to induce one of these persons to leave his or her employment." Filing 19-1 at 51, 96.

But by early 2017, J. Howell had fallen behind on royalty payments for the Alcoa store and the telephone was disconnected. Filing 18 at 18. A private investigator sent by Complete Nutrition found the store closed. Filing 18 at 18. And in late October 2017, the Knoxville Complete Nutrition store had

been rebranded as "Alpha Nutrition." Filing 18 at 18-19. Much (but not all) of Complete Nutrition's trade dress was removed from the store, and Alpha Nutrition began promoting itself as such, touting its new products and the lower prices purportedly made possible by no longer paying franchise fees. *See* filing 18 at 19-22. Alpha Nutrition also continued to sell its inventory of Complete Nutrition products, at sharp discounts. Filing 18 at 22; *see* filing 19-1 at 122.

In response, Complete Nutrition sent J. Howell a demand letter, and when that received no response, initiated this litigation. Filing 19-1 at 120; filing 1. Complete Nutrition now seeks an injunction enforcing the non-compete provisions of the Agreements. Filing 16.

## DISCUSSION

When deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013); (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### THREAT OF IRREPARABLE HARM

A preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm,

the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski,* 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Packard Elevator v. I.C.C.,* 782 F.2d 112, 115 (8th Cir. 1986). And harm is not irreparable when a party can be fully compensated for its injuries through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009).

The Court finds that Complete Nutrition has shown a threat of irreparable harm in this case.[2] Alpha Nutrition's business has been built, at least in part, on Complete Nutrition's goodwill, which Alpha Nutrition is now arguably misappropriating. Alpha Nutrition's business was also built, at least in part, on education and instruction provided to its employees by Complete Nutrition, as consideration for services that are no longer being provided. *See* filing 19-1 at 5. Alpha Nutrition's sale of Complete Nutrition's products alongside new products of unknown provenance, along with Alpha Nutrition's use of its own trade dress along with remaining elements of Complete Nutrition's trade dress, creates a likelihood of the sort of confusion that has often been held to establish an irreparable injury. *Cf. United Healthcare Ins. Co. v. AdvancePCS,* 316 F.3d 737, 741-44 (8th Cir. 2002).

Complete Nutrition's evidence also suggests that its efforts to re-establish a franchise in the market will be impaired by the presence in the market of a former franchise. Filing 19-1 at 9. And it is difficult to assess the

---

[2] To be sure, not all of Complete Nutrition's evidence in this regard is persuasive. For instance, Complete Nutrition's argument that the defendants are "disparaging" Complete Nutrition is supported only by statements that appear to the Court to be fairly routine puffery of Alpha Nutrition's products, neither directly nor indirectly alluding to Complete Nutrition. *Cf. United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1180-85 (8th Cir. 1998).

effect on Complete Nutrition's reputation and goodwill in the relevant market while Alpha Nutrition uses the springboard it received from Complete Nutrition as a basis to build its business, and Complete Nutrition is denied the presence in the market for which it contracted. It is also difficult to quantify the degree to which the defendants will be unjustly enriched by their use of the support they received from Complete Nutrition. The Court finds that these damages are not satisfactorily remediable by money damages, and that Complete Showing has sufficiently shown a threat of irreparable harm.

LIKELIHOOD OF SUCCESS ON THE MERITS

In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cnty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show a greater than 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

In this case, there is little reason to doubt that the defendants are engaged in conduct that violates the post-termination non-compete provisions of the Agreements. So, the real question is whether those provisions are enforceable. Complete Nutrition argues that it is likely to succeed in

demonstrating that the provisions are enforceable under Nebraska law.[3] The Court agrees.

Under Nebraska law, franchise agreements like these are akin to the sale of a business for purposes of determining the enforceability of a post-termination covenant not to compete. *H & R Block Tax Servs., Inc. v. Circle A Enterprises, Inc.*, 693 N.W.2d 548, 556 (Neb. 2005). So, the primary issue[4] is whether the covenants are reasonable in both space and time so that the restraint imposed is no greater than necessary to achieve their legitimate purpose. *See id.* And Complete Nutrition is at least reasonably likely to succeed in showing that they are. In *H & R Block Tax Servs.*, the Nebraska Supreme Court upheld a 1-year restraint in a franchise agreement within a 45-mile distance from the location of the franchise. *Id.* And while it might ultimately be concluded that the restrictions here are unreasonable, based on specific evidence about the nutritional supplement business or the Knoxville

---

[3] There is a colorable argument that Tennessee law might apply, despite choice-of-law provisions in the Agreements favoring Nebraska law, *if* applying Nebraska law would be contrary to a fundamental public policy of Tennessee. *See DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895-97 (8th Cir. 2006). But the Court applies Nebraska law here for two reasons. First, when the parties do not raise a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits. *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003). And second, Tennessee law appears to be broadly consistent with Nebraska law regarding the enforceability of restrictive covenants. *See Total Car Franchising Corp. v. L & S Paint Works, Inc.*, 981 F. Supp. 1079, 1081–82 (M.D. Tenn. 1997) (citing *Hasty v. Rent–A–Driver, Inc.,* 671 S.W.2d 471, 473 (Tenn. 1984)). So, in the absence of any indication that Tennessee public policy precludes applying Nebraska law, the Court will give effect to the parties' choice of law. *See Castillo*, 435 F.3d at 895-96 (citing *Vanice v. Oehm*, 526 N.W.2d 648, 651 (Neb. 1995)).

[4] The Court sees no basis to argue the covenants are injurious to the public interest. *See id.*

market area, there is no evidence at this point to distinguish this case from *H & R Block Tax Servs.*

Accordingly, Complete Nutrition has shown a sufficient likelihood of success on the merits of its claim for enforcement of the restrictive covenants in the Agreements.

## REMAINING *DATAPHASE* FACTORS

Finally, the Court must consider the balance of harms between the parties, and the public interest. *See Dataphase*, 640 F.2d at 114. The Court agrees with Complete Nutrition that the public interest is not implicated here. Filing 18 at 29. The Court disagrees, however, that the harm that the defendants might suffer from an injunction "is slight by comparison" to the harm sustained by Complete Nutrition. *See* filing 18 at 29.

Because a preliminary injunction is an extraordinary remedy never awarded as of right, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 24. And while it is true, as Complete Nutrition suggests, that the defendants are "free to move their competing operations" outside the 25-mile area proscribed by the Agreements, *see* filing 18 at 29, that is hardly an inconsequential undertaking for a small business—as a practical matter, it involves shutting the defendants' business down. The effect of the non-solicitation provisions of the Agreements is also far from clear, given the family-owned-and-operated nature of the stores.

The Court nonetheless finds that a preliminary injunction is appropriate in this case. The Court recognizes that this injunction will impose a severe burden on the defendants—but it is the burden for which they contracted, and is warranted by the flagrant breach of those contracts that is evidenced here. The defendants have taken no corrective action at all,

nor offered any defense for their ongoing conduct. *See Prudential Ins. Co. of Am. v. Inlay*, 728 F. Supp. 2d 1022, 1031 (N.D. Iowa 2010). Accordingly, a preliminary injunction will issue.

IT IS ORDERED:

1. Complete Nutrition's motion for preliminary injunction (filing 16) is granted.

2. The defendants, any of the owners of J. Howell, LLC, and any member of the defendants' immediate families, are restrained from directly or indirectly performing any services for, engaging in or acquiring, being an employee of, having any financial interest in, loaning money to, or having any interest based on profits or revenues of any competitive business, which means any wholesale or retail business that has gross sales of more than 35 percent from the sale of health and wellness products, including nutritional supplements, athletic performance enhancers and supplements, and general health and wellness supplements (except for a 3 percent or less beneficial interest in a reporting company registered under the Securities Act of 1933, as amended), within the geographic area defined below.

3. The geographic scope of the restriction set forth in the previous paragraph is the area within the following locations:

a. A geographic area consisting of all land within a circular area whose center point is 11027 Parkside Drive, Knoxville, TN 37934 and whose radius is a distance of 25 miles in all directions from such center point; and

b. A geographic area consisting of all land within a circular area whose center point is 232 Hamilton Crossing Drive, Alcoa, Tennessee 37701 and whose radius is a distance of 25 miles in all directions from such center point.

4. The defendants, any of the owners of J. Howell, LLC, and any member of the defendants' immediate families, are restrained from employing or seeking to employ any person who was at the time employed by Complete Nutrition, its affiliates, licensees or franchisees of Complete Nutrition or its affiliates, at any other Complete Nutrition Store, and from directly or indirectly inducing or seeking to induce one of these persons to leave his or her employment.

5. This order shall continue in force until March 6, 2020, unless modified by further order of the Court.

Dated this 6th day of March, 2018.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
United States District Judge